Case No. 14-5215, Judicial Watch, Inc. Appellant v. United States Department of Justice. Mr. Bekesha for the appellant. Mr. Cizdak for the appellee. And is it Mr. Bekesha? Bekesha, yes. Good morning. May it please the Court, Michael Bekesha on behalf of Judicial Watch. This case is rather simple. Judicial Watch sent a FOIA request to the government for a very specific set of records. The government searched for those records and found eight records responsive to Judicial Watch's request. The government is now withholding these eight records. However, unlike the typical FOIA lawsuit, the government isn't claiming one of the nine statutory exemptions. Instead, the government is withholding these records under two flawed lines of reasoning. First, the government argues that the district court's local rule prohibiting disclosure. Second, it argues that a recommendation by Judge Jackson during a status hearing prohibits disclosure. Neither argument is supported by facts or law. The government is improperly withholding records, and I'll go into exactly why that is. Why isn't the first of the two arguments that you mentioned really an Exemption 3 ground, that it's otherwise properly withheld according to here the statute that authorizes the rules on ADR confidentiality? Exemption 3 doesn't apply because Exemption 3 only applies to statutes passed by the legislature. So the local rules are not statutes passed by the legislature. But they're required by federal law as part of the setting up of the court adjunct ADR, no? I think the rules are required, yes. But the specific language of Exemption 3 and how the case law plays out, Exemption 3 can only apply to statutes. There are specific requirements that are required to be taken by the government to claim Exemption 3 status. Tell me what you're thinking about in that regard. There are requirements that the government has to disclose which statutes they are using to withhold under Exemption 3. They have to be very specific in nature. I do believe this court has looked at this for some of the federal rules of civil procedure and has said those rules don't fall within Exemption 3 because they're not statutes passed by Congress. I think for the same reasons, these local rules wouldn't apply as well to Exemption 3. So if the district court had entered a protective order and said that I want all documents and everything relating to settlement negotiations to be protected and not discoverable in any proceeding, you would say that that would be a different case, how? Or you would be making the same argument? It would be a different case, Your Honor. In that instance, there would be a protective order preventing the disclosure of these records. Unfortunately, we don't have that in this case. If the government could have, or the House Committee, the other party in that litigation, could have went to the court and asked for a protective order to prevent the disclosure of any of the records that were being transmitted between them. But if a judge decides that a protective order isn't needed because the local rule covers it, then why isn't that just as good as having a protective order? Well, that didn't happen in this case either, Your Honor. The judge in that specific case did not say there is no protective order here because the local rule applies. So that would be a different instance in this case as well, Your Honor. You're saying that Judge Jackson would have had to do that. It's not good enough that Judge Leon essentially came to that conclusion. That's correct, Your Honor, because the protective order would have to be in place by Judge Jackson. Judge Leon didn't find that. Judge Leon first found that the local rules applied. The local rules simply do not apply based on the face of the language. The common general. Just bracketing that for a moment, and of course we want you to get to that. But I'm just curious about, so the statute I think that's relevant is 28 U.S.C. 652 D, which requires confidentiality provisions by local rule for confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications. So it's basically a statute mandating something like the local rule here. And I guess I wonder if you have any cases that have anything like that form. I know you mentioned the federal rules cases, but there's not a statute mandating you have to have, you know, Federal Rule 26 and it has to have this bottom line where there really is this statutory mandate.  I'm aware the government at the lower court never argued Exemption 3. We didn't brief that issue. So I'm not prepared to address that. Happy to go back and take a look at that court if the court thinks that's necessary. I don't see Exemption 3 invoked in the government's brief. It seems to me once they distinguish between internal and external communications, it has to be dropped out. That's correct. They originally claimed Exemption 5, which would have been the delivery of process for interagency. At that point, the statute dropped out. Let's put it that way. The FOIA dropped out. That's what appears to happen, yes, Your Honor. At no point has the government claimed Exemption 3 in this case. They simply claim that the local rules apply. It's my client's position that the local rules do not apply because the government, the parties in that litigation were ordered into formal mediation on March 18th, and all the records that are responsive to this FOIA request predate March 18th. All these records were created. The rule in question refers to both matters occurring during the mediation, right, and matters occurring in connection with the mediation. That's correct, Your Honor. So there's something more than what happens during the mediation, right, and something that could be before or after, but in connection. In connection with, Your Honor. And my client's position is that that in connection has to be once the parties are within the program. So if mediation— Well, what if there's a colloquy in judges' chambers about referring the matter to mediation, and one side says, we really don't think that's useful here, and the other side's proceeding in bad faith, blah, blah, blah. You don't think that's in connection with— That could be, Your Honor, but again, that's not the case we have before us today. What we have here— Well, no case is like the case we have before us today. That's not a helpful observation. That's correct, Your Honor. But we're not talking about that type of communication. We're talking about the two parties, in this case the executive branch in Congress, meeting, conferring, discussing these records that were responsive to a subpoena. They were not in the mediation, in the formal mediation session. They hadn't even been ordered into it. So I understand that— What do you think the judge meant when she said, I don't want to know about this? Didn't she say, I don't want to know, but you can tell the Washington Post? I think she could have meant that. Really? Wouldn't that be ridiculous? I don't think so, Your Honor. I think the court had a specific case in front of her, and she didn't want to know what the parties were saying outside of her courtroom. So it would be perfectly okay if they released the matter to the world and somehow she managed to avoid knowing about it. I imagine she assumed that was going to happen based on who the parties were and their desire to want to litigate everything in the media. If she thought that was going to be a problem and she wanted to prevent that, she could have done so. She could have put a gag order on the parties. She could have issued a protective order, as Judge Wilkins suggested, but she didn't do that. All she said was, you know, I want you guys to talk, but I don't want to know about it. Judge Leon found— I'm sorry. No, go ahead. Judge Leon read this record, and to him it was elusive that she meant exactly that, that no disclosure was to be allowed at all. And if we agreed with you that it's not elusive— That's correct, Your Honor. —it would still be ambiguous, wouldn't it? I think it could be ambiguous, yes, Your Honor. Let's put it this way. Judge Leon's opinion may not be the only viable view of this matter. Yours may as well. That's correct, Your Honor. Okay, so we've got these two. There's some uncertainty about what this order really means. Now, that was also true in the Morgan case. Yes, Your Honor. What we did in the Morgan case was we said we recognize that it may be impossible to determine the scope and effect of the seal from the face of it and the circumstances attending its imposition. Thus, in order to meet its burden of proof, the DOJ may need to seek a clarification from the court that issued the seal. Now, why shouldn't we remand this case to the district court so that the Justice Department can indeed petition Judge Jackson for a clarification? I think that would be entirely appropriate, Your Honor. Appropriate? Yes, Your Honor. I think if that's necessary— I think the government might agree with you. Do we have a settlement here? That could be possible, Your Honor. And bear in mind, you're saying that's appropriate. That's not in the public domain. Yes, Your Honor. I mean, in my client's position, our position is that if the proper steps were taken at the district court, if the parties and the court wanted a protective order, they could have sought that. So, yes, if the government went to Judge Jackson and said, can we issue a protective order, here are the reasons why, she would make a determination. It's not entirely clear if her determination would be a protective order is proper under the rules in this instance. She may determine— I mean, just along these very lines, I'm curious why your case, you didn't file it as a related case to that case. For just these reasons, it feels a little like, you know, something that is related to an ongoing matter is being brought before a separate judge. It feels a lot. That happened in the Maryland D.C. case, but these are both D.C. cases. They are, Your Honor. I think they weren't filed as a related case because FOIA cases tend to be very distinct and separate from other issues. Who makes that determination whether it's a related case? The related case, how it happens would be the plaintiff would file a related case form with the district court. It would be assigned to the original judge that has what would be deemed the related case. But you didn't, as plaintiff, do that? We did not, Your Honor. And was it not open to the government to do that? The government has an obligation as well. Any party before the court has an obligation, if they believe it's a related case, to file such a form. The district court then has the first opportunity to decide whether or not it is a related case. I suppose the district judge, Leon, could have done the same thing. He probably could have, Your Honor. Mr. McKenzie, I had interrupted you when you were about to say why you thought if it were brought before Judge Jackson that she might not find that she had authority to enter a protective order. Well, I think we just don't know what would have happened, and we don't know what would happen, which is why I think it is appropriate for the case to be remanded and have it go through that process. I'm just not 100% sure what jurisdiction she would have to seal these records that may have not been before her. She may very well have the authority. I just don't know. I just don't want to say we need to assume that. I think it would have its own process. It's a question of her interpreting her own order. That's correct, Your Honor. So I think that's important to remember, and none of that has happened yet in this case. Is it her interpreting her own order, or does she have, because the case is still pending before her, the motions made to prevent disclosure of those, to grant her a new order? She may, Your Honor. I'm not saying that she doesn't have the jurisdiction. I'm just saying it's a question that should be raised and would be important to be raised. Yes, I agree. But since the argument here, your argument, turns a good deal on timing these documents having been created prior to the formal opening of the mediation, a protective order now would presumably not be non-protonic. It's an interpretation of a prior order that would relate back. That's correct, Your Honor. I think any type of order that Judge Shaxson now issued wouldn't necessarily involve determining whether or not these records fell within the formal mediation process. Her determination would be strictly on whether or not she believes it's important that these records not be disclosed. Why wouldn't it be a question of whether when she said, don't tell me, she meant don't disclose it to the world because I'm going to know? That could be, Your Honor. Or if she issued a protective order today and the government still hasn't turned over those records, I think the government would have an argument to say that we cannot turn these records over now because there's a protective order. Now, I don't want to agree with that 100%. I would have to look at the case law on that. But I think there would be a strong argument there. I mean, I think when Plaintiff brought this case, the Plaintiff's position, our position, was that none of this actually happened, that the local rule didn't apply, Exemption 3 didn't apply, there was no true protective order to the extent there is one. As Judge Ginsburg, as you said, it's ambiguous, which in this favor favors disclosure. So nothing has happened, and so these records are improperly being without before circumstances could change. I'm a little mystified because these are, as you said, records that have already crossed between the two parties in the case. Why haven't they been available to you from the congressional side? If they're documents that the Justice Department has, could, in your view, people, the oversight staff on the FOIA? Yes, Your Honor. FOIA doesn't apply to Congress. To the extent that the public may ask for records of Congress, it's completely up to Congress to decide whether or not it's completely voluntary whether or not they disclose. Have you sought them? I'm not sure if we have, Your Honor. What is the status of the litigation between Congress and the Justice Department before Judge Jackson? I believe, Your Honor, that summary judgment briefing has concluded and it is awaiting a final ruling. There's been a lot of briefs filed in that case, and so I'm not 100% sure exactly what the procedure is, but best I can tell that's where we are in that case. As far as you know, the mediation is over? Mediation is over. Mediation failed. My understanding is the parties went to mediation a couple times, and nothing happened, and briefing proceeded. But one last point to make. Judicial Watch did not request the records of the communications between the parties after they were in the formal mediation process because we recognize that the local rule does apply. To the extent that you're arguing that, you know, the principles of FOIA favor disclosure, et cetera, et cetera, do those principles really align with the facts here where you're trying to get documents related to settlement discussions and or a mediation where really all of the case law and all of the general principles are that, you know, there's a privilege there in the sense that you don't want to discourage settlement. We want to encourage settlement, and you potentially discourage settlement if you make, you know, discussions available to the world. I think there is a concern there generally, Your Honor, but I think that may be a good policy to have these records not be able to be disclosed. However, that is not what Congress has said. If Congress thinks it's important, Congress can pass legislation adding that to the list of the nine clearly delineated FOIA exemptions. I think if the court was concerned about that, the court potentially may enter protective orders when necessary to prevent that disclosure. The problem with that is it's a policy choice, and right now Congress has decided that FOIA is a disclosure, not a withholding statute, and that we need to abide by the nine clearly delineated exemptions. And within those, you have Exemption 3 for specific statutes, which doesn't apply in this case. You have Exemption 5, which is Deliver of Process, which covers most general nondiscoverable material. That simply doesn't apply in this case as well. But if it's good policy, Your Honor, then Congress needs to fix that. I think in this case, at this time, the records are being improperly withheld under the statute as written and as applied by the courts. I guess then I don't understand your argument, because is your argument that these documents aren't covered by the local rule, or is it your argument that even if they are covered by the local rule, that's not a basis for withholding them from disclosure? Our argument is that these records are not covered by the local rule because they were created prior to the parties entering the formal mediation. So you're not making the argument that even if they are covered by the local rule, that's not a valid basis for withholding them? It may be, Your Honor. However, that's not the case. That simply isn't the case here today. We're not talking about records that were created after they entered the formal mediation process. You said that may be, and I wasn't sure what you were agreeing with. You said even if they are under the local rule, are you saying that's not a valid basis? And I heard you to be saying you don't need to argue that because you think they're just not under the local rule. That's correct, Your Honor. Therefore, if we found that they were, you would have to live with that. I think that's correct, Your Honor. Did you go further in your brief? Looking back, I think we may have hinted at that. I don't think it was fully explained in fully brief. I think our position really is these don't fall within the local rule because they were created beforehand. We'll give you a couple minutes for rebuttal, but let's hear now from Mr. Sinzak. Thank you, Your Honor. May it please the Court, Jerry Sinzak, appearing on behalf of the Department of Justice. I think I'd like to just jump right in with this question that's been raised about a remand to Judge Jackson, about a clarification. That is not a necessary course here. What we have here is a definitive ruling from a judge in the district court, Judge Leon, on the applicability of a local rule, specifically Local Rule 84.9, and he has opined that that rule applies here and in certainly any other circumstance that would be entitled to deference, and it's entitled to deference here. It was supported by a number of factors, as Judge Leon pointed out in his opinion, including the text of the rule, which is quite broad, the purpose of the rule, which is to protect open and frank communications. It's protected by the actions of the parties who clearly believed that the information was confidential. How do we know that? In the joint status report that they filed in March, they made that clear. And there's certainly nothing in the record to suggest that either party suspected otherwise, and that might be the reason why Judicial Watch didn't approach Congress because they are under the same obligations under Local Rule 84.9 in Judge Jackson's command. And then I'd even go further. Even if we looked at specifically not just Rule 84.9 but Judge Jackson's command, as this Court made clear in Morgan, it's not necessary to seek a clarification. If it's possible, as Judge Ginsburg, as you quoted, said only if it's impossible to determine based on extrinsic evidence, the text of the order, the actions of the parties, other local rules. And here we have all of those factors supporting the view that these were confidential communications, and Judge Jackson expected them to remain confidential and so forth. Let me just play devil's advocate and make the contrary arguments on each of those points and get your reaction. On Judge Jackson's comment, which I think might be even a stretch to read it as an order, she says, I don't want to hear. It seems to me that that might be very parallel to that many judges don't want to know anything or be involved in any settlement negotiations. If there are settlement negotiations, they send it to a magistrate or in a court like ours where we have mediators, send it to a mediator. And part of that is they don't want their impartiality to be tainted by any knowledge of what kinds of concessions the parties might be willing to make and what's going on between when they want to make this decision on the law. And the notion is not so far-fetched, in my view, to think that she says, I don't want to hear that. I'm not going to read anything that comes out in the press on this. And it's analogous to a juror sitting on a case who, you know, we don't have to prevent the press from covering a case in order for a juror to fulfill, you know, that neutral's obligation to remain impartial. They don't read. They won't listen. They'll tell people who start to talk to them about something I don't want to know. So that's an understanding of her order that I find very commonsensical, or at least it is arguably commonsensical or even compelling. Your Honor, I think it's important in answering your question to keep in mind what communications we're talking about here. We're talking about settlement communications. Exactly. And I think what Judge Wilkins pointed out, the baseline principle I think all litigants in courts would take is that settlement communications need to be kept confidential. There's no privilege for settlement communications. That's why we're here, right? I mean, in the Sixth Circuit, there's recognition of settlement privilege. In Goodyear, in other courts, not. We don't have that. Are you asking us to recognize that? Well, your court doesn't have to recognize the settlement privilege, of course. But there isn't one, okay? I don't know. I mean, in the courts. And so I was asking you about the order and the interpretation of the order because then we can talk about the rule, which I think is the more general confidentiality interest. But in terms of the order, I've given you a characterization of what she was saying. And how would you say, no, no, that order covers as broad or as different? I would say that, you know, given the nature of the communications themselves, settlement communications, and all the background principles that surround that, certainly the Sixth Circuit case that you mentioned discusses them, and I think other cases have also discussed the general principle that settlement communications, in order, it's necessary to keep them confidential. And I think that's the background principle that all litigants and courts operate from. But she wasn't asserting a settlement privilege, and you're not arguing for a settlement privilege, and we don't have case law in our circuit recognizing a settlement privilege. So I'm not sure what you're saying about the scope of her order. Well, first of all, she is operating from the backdrop of the local rules. Yes, okay. Well, let's talk about the local rule then. So local rule 84.9, one way of understanding it is that when Congress set up quartered ADR, some parties were opposed to that because they said, well, we're going to have some civil servant that we haven't chosen as a mediator sitting on a case, and how do we know that person isn't going to blab to the judges, to the public? You know, we don't trust that person who we haven't hired. And so in order to sort of grease the way and allow that legislation to go through, there's a portion of it that says, no, no, no, everything in that will be confidential. But that doesn't create a general settlement privilege. That's because when we parties are talking, we can agree that we're going to keep it confidential, and we have a joint interest, and we're not going to violate that. That's parties on the subject of FOIA can sort of agree or, you know, hire someone who they think is going to keep their confidentiality. The concern is when you have this civil servant that's been foisted on you. So there's a reason to read that quite narrowly. Respectfully, Your Honor, we would disagree in terms of, and we can talk about whether in other circumstances the rule should be read narrowly or whether the facts wouldn't support a finding that the rule applies. But certainly in the circumstances presented here, where you have repeated admonitions from Judge Jackson that mediation will be ordered at any time, and the parties are, in a sense, accepting their own mediation efforts or own settlement talks in lieu of that order. And then eventually it was ordered, and then those talks, of course, became part of the settlement. It became the foundation for the formal mediation that was ordered. And under those circumstances, you know, we're not talking about the general case, but very specific circumstances in which Judge Leon then concluded they were made in connection with settlement. So perhaps there could be other circumstances, like Your Honor's positing, where there wasn't as close a connection to mediation. But here it's clearly parties' understanding that these are being undertaken in lieu of and in connection with the mediation that was eventually ordered. You said those talks became part of that mediation. Do we know whether these actual documents, these eight documents, were ever given to the court mediator in the process of the discussions? Yes, we do. Four of the eight were given to the mediator. Two letters, I believe, and two draft settlement agreements. And do we know the nature of the others? Were they earlier drafts or other drafts of settlement agreements? There were other letters and other settlement drafts. I'm not sure of the exact timing, but that may be the case. But again, just to reiterate here, I think, as I was pointing out here, we have a definitive ruling from Judge Leon in the district court on the application of a local rule. And a number of factors support that application, including the behavior of the parties, the purpose of the rules, the text of the rule, which is quite broad. And that ruling here is certainly entitled to deference. If Your Honors have no further questions, we'd ask that you refer. Thank you. Thank you, Mr. Sinzak. Mr. Mikasha, if you wanted to have a minute for rebuttal. Thank you, Your Honor. Real quick, counsel talks about how mediation could have been ordered at any time. You know, that's in every civil litigation at the district court. Mediation is always a possibility. The court could always correspond to order into mediation. So I don't think just because mediation is a possibility, it means it was in connection with it. Then with regard to the four of the eight letters that were eventually submitted to the mediator, the local rule 84.9C3 specifically states that information which is obtained through discovery or other means outside the mediation process shall not be rendered inadmissible or nondiscoverable because it was used or presented in mediation. But these weren't obtained through discovery or otherwise. They were developed by the parties in the process of settlement. I think they were developed by the parties outside of the mediation process. So I think that rule would apply in this instance that just because the records were eventually handed over to the mediator doesn't mean that they're protected. It's much like attorney-client privilege just because the client provides a letter. Or a work product maybe is a good analogy. A work product, it's the attorney's thinking that is protected, not the underlying facts. And I don't think we would disagree, or I don't think the government would disagree with that, that if an attachment to the settlement was, let's say, a damages computation and they put that package together, here's a few pieces of evidence and here's our thoughts on it, and gave it to the mediator, it's only the here's our thoughts on it part and the fact that it was given to the mediator that would be privileged by 84.9. But I think you're exactly right, not the underlying documents. Not the underlying documents, which means the Justice Department may have violated the mediation protective order by telling us that the records were produced to the mediator. Because the fact that they were produced to the mediator is the material that's being privileged under the rule, not the material that they provided. But, again, last point on that, it's only four of the eight documents. To the extent that the court thinks that argument has some weight for the documents that still weren't given to the mediator and should be disclosed. No further questions? Thank you. Thank you. The case is submitted.
judges: Pillard, Wilkins, Ginsburg